SUTLIFF ET AL. V. BROWN.

1. **Practice in Supreme Court:** WAIVER OF GROUND OF DEFENSE. Where a point is raised by the answer as a ground of defense, and it may have been the ground on which the trial court based its judgment for defendant, the point will not be disregarded in this court, unless expressly waived.

2. **Judgment:** CONCLUSIVENESS OF AS AGAINST COLLATERAL AGREEMENT. A judgment is designed as a finality; and courts are not open for the rendition of apparent judgments, but which are not judgments in fact, because the parties have agreed in advance that they should not be conclusive. Accordingly, in this case, where a surety brought an action against his principal and his co-sureties to recover amounts paid by him in the settlement of claims against his principal, and obtained judgment by default for different amounts against the several defendants, *held* that the co-sureties could not, in a subsequent action, have the judgments canceled, on the ground that, by an understanding between all the parties, the judgment plaintiff was a trustee for all the other parties, and was entrusted by them to take judgment only for the proper (but undetermined) amounts, but that he had in fact taken judgment for amounts greater than were equitable.

3. **Trust:** ACCOUNTING FOR PROFITS: WHOLE TRANSACTION TO BE CONSIDERED. An action cannot be maintained against a trustee for the profits of a transaction, or series of transactions, until it is closed up, so that it may appear what the profits are; and where, upon the whole transaction, or series of transactions, the profits which have come into the hands of the trustee do not exceed the losses, no recovery can be had. So *held* under the facts of this case, for which see opinion.

**4. Judgment:** CREDIT NOT INDORSED: EQUITABLE RELIEF: PRINCIPAL AND SURETY. Where a surety has obtained judgment against his principal and co-surety for payments made, the co-surety can not have an accounting in equity with the judgment plaintiff, on the ground merely that the latter has received money which should be applied as a credit on the judgment, for it will be presumed that the judgment plaintiff will indorse the amount before issuing execution, or that, upon payment of the difference, he will cancel the judgment.

*Appeal from Johnson District Court.*

FRIDAY, OCTOBER 24.

ACTION in equity for an accounting, and for the cancellation of certain judgments. The court dismissed the plaintiffs' petition, and they appeal.

*S. H. Fairall* and *Milton Remley*, for appellants.

*Boal & Jackson*, for appellee.

ADAMS, J.—The different matters in controversy in this case have arisen by reason of the insolvency of one C. W. McCune. The plaintiffs, H. S. Sutliff and J. P. McCune, and the defendant, E. A. Brown, and also one Pratt, not a party hereto, were co-sureties for C. W. McCune. Brown purchased claims against C. W. McCune, and paid indebtedness against him, for which he and the plaintiff were liable as co-sureties, and afterwards obtained a judgment against C. W. McCune for the sum of $27,690.83, and a decree of foreclosure of certain mortgages. These plaintiffs, Sutliff and J. P. McCune, were made parties defendant to the action, and judgment was rendered against each for part of the amount for which judgment was rendered against C. W. McCune, to-wit, judgment for $868.93 against Sutliff, and $2,000 against J. P. McCune. The plaintiffs claim that there is nothing due upon these judgments, and that they ought to be canceled. There were several transactions out of which the matters in controversy in this case have arisen, and some of them are complicated. A more detailed state-

Sutliff et al. v. Brown.

ment of the facts will be made as it shall become necessary in the determination of the different questions.

I.   The plaintiffs claim to be aggrieved by the rendition of the judgment against C. W. McCune, in that it was rendered against him for too large an amount, and the consequence was that property was exhausted upon which they, as sureties for C. W. McCune, had a right to rely for their protection.   They also claim to be aggrieved by the rendition of the judgments against them respectively, as above set out, in that they were rendered for too large an amount.

The defendant, while denying that the judgments were rendered for too large an amount, avers that the plaintiffs are concluded by the judgments.

The first question which the plaintiffs present in their argument is as to the conclusiveness of these judgments.

Before proceeding to its determination, we ought, perhaps, to say that the defendant does not, in his argument, seem to

1. PRACTICE in supreme court: waiver of ground of defense. especially insist upon their conclusiveness.  His counsel say for him that he wishes the case tested by the rules of conscience, and they make an elaborate argument for the purpose of showing that the amount for which the judgments were rendered is correct.

The fact, however, that the plaintiffs present the question as to the conclusiveness of the judgments, as lying upon the threshold, leads us to suppose that the question was regarded as in the case upon the trial below.   It follows that the court below may have held them to be conclusive, and, as the question is not now expressly waived, we think that we must still regard it as in the case.

The alleged ground upon which the plaintiffs claim the right to question the correctness of the judgments, in respect

2. JUDGMENT: conclusive-ness of as against collateral agreement. to their amount, is that the defendant, Brown, in obtaining the judgments, was acting as their trustee.   The evidence shows that C. W. McCune, out of whose insolvency these troubles have arisen, was a large farmer in Johnson county.   His

farm and personal property thereon were supposed to be worth from $40,000 to $50,000. He was the owner of several thousand dollars' worth of graded stock, which he had bought at large prices; but in, so doing he had become largely indebted, and had been obliged to raise money by borrowing. He had mortgaged his property, but his resources for obtaining money by mortgaging were insufficient. He accordingly induced his brother, the plaintiff, J. P. McCune, and his brother-in-law, the plaintiff, Sutliff, to become sureties; and, in addition, he induced his neighbor, the defendant, Brown, and his neighbor, Pratt, not a party hereto, to become sureties for him.

The plaintiffs, and Brown and Pratt also, borrowed for him $7,500 of the Johnson County Savings Bank, and, to protect themselves, they took his note, secured by mortgage upon his property, real and personal, which mortgage, however, was subsequent to other mortgages. This debt to the Johnson County Savings Bank C. W. McCune succeeded in reducing. Brown purchased the prior mortgages, except one, and acquired or discharged some claims upon which the plaintiffs were sureties. He also acquired the mortgage above mentioned, given to secure the plaintiffs and Brown and Pratt for their liability to the Johnson County Savings Bank. Having acquired these claims, he proceeded to foreclose, making parties to his action not only C. W. McCune, but these plaintiffs, Sutliff and J. P. McCune. The latter were made parties, not only on account of their alleged liability to Brown, but because they were interested in a mortgage which was subsequent to other mortgages held by Brown, and embraced in the foreclosure action.

It was important to these plaintiffs, as well as to Brown, that the different mortgages should be foreclosed, and the proceeds applied, as far as they would go, in the payment of the indebtedness. They did not, therefore, object to the foreclosure, but entered into a written agreement with Brown in respect to the application of the proceeds of sale. It is

unnecessary to set out the whole agreement. It contained a provision in these words: . "And it is understood and agreed that any sum so applied upon said note of $7,500 shall be in his (said Brown's) hands a trust fund; first, to repay said Brown and the undersigned any amounts they have paid, or may pay, upon their joint notes heretofore given to the Johnson County Savings Bank,     *     *     *     and, secondly, to apply any further balance to the extinguishment and payment of said notes, such payment to be so made as to make the amount so paid upon said notes by each of said makers equal, the liability of each of said four parties being equal." The foregoing, and some other things of a similar character, are relied upon as showing that Brown became the plaintiffs' trustee, and became charged with the duty of determining in their behalf the amount for which judgment should be taken against them, and also the amount of the prior liens which stood in their way, and which were held by him.

But we are unable to discover that Brown was made a trustee for any purpose except a proper application of the proceeds of sale. It would be a strange transaction for a debtor to make his creditor his trustee to obtain a judgment against him for an amount not agreed upon, and uncertain, and the correctness of which should be reviewable at any time. A judgment is designed as a finality. Courts are not open for the rendition of apparent judgments, but which are not judgments in fact, because the parties have agreed in advance that they should not have the characteristics of a judgment. These plaintiffs were called upon to adjust their liability and the amount of the prior liens in the foreclosure action. That was the very object of the action. There was no reason for postponing such adjustment to a later day. It appears to us to be a case of ordinary default, allowed by reason of sheer negligence, or negligence combined with confidence that the creditor knew what was due him, and would take judgment for only that amount. Courts of

equity are not organized for the protection of those who will make no effort to protect themselves when they have an opportunity to do so.

In view of the elaborate arguments made on both sides in respect to the correctness of these judgments, we may say that we have examined the evidence of their correctness, and are inclined to think that the ruling below could be sustained upon such evidence; but, holding, as we do, that the judgments are conclusive, it is not necessary or proper that we should go into a discussion of the evidence.

II. The mortgaged property was sold by Brown upon execution under his foreclosure, and was bid in by him for $22,800. From one of the tracts bid in he afterward sold timber, and after that he sold a portion of the land, and realized more than he bid on that tract, with interest. The plaintiffs claim that he should account for the profits, and allow the same to be applied toward the satisfaction of the balance of the judgment remaining after the execution sale. Their claim is based upon an alleged agreement that Brown should purchase at execution sale, and hold the land for future private sale for the benefit of himself and the plaintiffs.

*3. TRUST: accounting for profits: whole transaction to be considered.*

According to the plaintiffs' evidence, the agreement was that Brown should bid in the different tracts at certain agreed prices, if they did not sell for more to third persons; that Brown should proceed to dispose of the land at private sales for the benefit of himself and plaintiffs, and that they should share with him in the profits, if there were profits, and contribute to reimburse him for losses, if there were losses. Taking this to be the agreement, the question arises as to whether the plaintiffs are at present entitled to an accounting for profits. A portion of the land remains unsold, and it is impossible to say whether there may not be a loss sufficient to offset any profits thus far made. In our opinion, the time for an accounting of profits and losses has not yet come.

To entitle the plaintiffs to an accounting, they should, we

think, have offered to take the unsold land off the defendant's hands at some specific price, and if he refused to take such price he might probably be charged with the amount offered, and a basis thus be laid for an accounting.

III.  The evidence shows that one Austin McCune, son of C. W. McCune, entered into a cattle transaction with Brown; that in doing so he was assisted by his father, and it was agreed that the profits made by Austin should be paid by him to Brown, and applied on the father's indebtedness to Brown. The transaction was, in substance, as follows:  Brown furnished money to purchase cattle, which were cared for and fed for a time by Austin McCune on his father's land, and afterward marketed.  Brown was to be reimbursed for simply the money advanced and interest.  The plaintiffs claim that profits were made, and that the same ought to be applied upon the indebtedness in question.

THE SAME.

The fact appears to be that the transaction, as a whole, did not result in profits; that only the earlier sales did, and the defendant contends that, under such a state of facts, there was nothing to apply.

The parties agree substantially as to the amounts and dates of advances made by Brown, and as to the amounts and dates of receipts. · They show that at one time Brown had received $385.30 more than he had advanced, but immediately afterward he advanced $440 more, and afterwards the business was such as to result in Brown's obtaining only $54.25 more than his advances, which, as we understand, was less than his claim for interest.  The question presented is as to whether, under the contract, the court should separate the sales, and apply on C. W. McCune's indebtedness such profits as were made on the profitable sales, regardless of losses incurred on the unprofitable sales.  The language of the contract is as follows:  " The proceeds of said sale, or sales, are to be applied by said Brown, *First*, to the repayment of cost and ten per cent interest from the date of the money so fur-

nished; *Second*, the margin of profits remaining is to be applied towards the payment of," etc. In our opinion, by "margin of profits remaining" was meant the profit as it should appear as a whole at the close of the cattle transaction.

The plaintiffs insist, however, that there were two cattle transactions, the first under the contract above referred to, commencing January 31, 1880, and terminating March 23, 1881, and that, under such transaction, there was a margin of profits above losses.

The fact appears to be that, at the date last above mentioned, a second contract was entered into, by which the rate of interest on advances was reduced to eight per cent. This contract also provided for the application of profits as often as sales should be made.

But the second was made before the business under the first was wound up, and seems to amount to nothing more than a mere change of the terms upon which their cattle business should be conducted.

The plaintiffs claim that the profits at one time had amounted to $1,397; that this money was, under the second contract, used in the business, which was a virtual appropriation thereof by Brown, and that he should, therefore, be regarded as having received it, and, if so, that it should be regarded as applicable upon the indebtedness of C. W. McCune.

The theory that the profits were virtually appropriated by Brown seems to rest upon the alleged fact that the money realized as profits was used in the cattle business. But we are unable to discover that Brown had any benefit from such use, or expected to have. The books do not show that he received credit for any money except what he actually advanced. The fact doubtless is that profits were made which were never paid to Brown, and it seems not improbable that the money realized as such profits was used by Austin McCune. But we see nothing in this fact alone

which should render Brown chargeable.   He was not charge-able with profits which he neither received nor obtained a credit for.

It is true, as we have shown, he did, at onè time, have in his hands $385.30 more than he had advanced, but, the busi-ness being still in progress, and such as to require an almost immediate advancement of $440, which was made, we do not think Brown should be charged with the $385.30. Neither that sum nor any other was a " margin of profits remaining," taking the word " remaining," as we do, as refer-ring to the time of the close of the cattle transaction.   As to profits made after the date of the second contract, no question arises, because there does not appear to have been any.

IV.   The plaintiffs claim in argument that the defendant, after the renditition of the judgment in his favor, received

**4. JUDGMENT:** credit not in-dorsed : equit-able relief: principal and surety.

$247.20 as money collected on a note belonging to C. W. McCune, and which amount should be endorsed upon the judgment.   The theory is that this was a payment of so much by C. W. McCune.   If it was such, it would operate, of course, as a satisfaction of so much of the judgment.   But we do not think that such mere fact of payment would entitle the plaintiffs to equitable relief.   If Brown received such pay-ment, it is to be presumed that before the issuance of an execution against the plaintiffs he will make the proper endorsement, or, if the plaintiffs should tender the balance due after such payment, that he would cancel the judgment.

We think that the decree of the district court must be

AFFIRMED.